CHITTENDEN,
January,
1833.

ISAAC WARNER vs. NATHAN HALL.

If A. execute a note at the Bank as surety for B. & C. and B. abscond before it falls due, and A. knowing the fact, call on C. and get him to renew the note without disclosing it, yet if A. ultimately pay the Bank, he can recover the amount of C. and this although as between B. & C. the latter was entitled to indemnity.

This was an action of Indebitatus Assumpsit commenced in the County Court.—Plea, Non Assumpsit—and Issue to the Jury.

On trial, the plaintiff, claimed the sum of $200 and interest for that sum, which he alleged he had paid as surety for the defendant and one Solomon Morton to the Branch Bank at Burlington. It appeared in evidence, that before tha 29th September, 1830, Morton had executed a note, to C. F. Warner, & Co. for about $160, and that Hall signed the said note as surety for Morton—that this note being due on the said 29th Sept. 1830, Morton and Hall made a note to the Branch Bank for $200, and that Warner signed it with them at the time at their request as surety :—that Warner received the money on the note, and after paying the amount of the note to C. F. Warner, & Co. the balance was paid over to Morton.

The defendant contended that the plaintiff ought not to recover, and by way of defence introduced witnesses who testified to the following facts.

That said Morton absconded on Saturday, the last day of December, 1830, and Warner was informed of this fact the next morning, at which time Warner came to the Bank, and on inspection found the note due that day. That Warner immediately came to the conclusion to see Hall and was in Williston about noon the same day, and then and there stated to Hall that the Bank Note fell due that day, and said he doubted whether Morton would make out the money, and advised to have a renewal note made :—that Hall objected to signing another note, and stated he thought Morton would make out the money, but at length consented to sign on the suggestion of Warner, that he would make a new note and leave a space for Morton to sigh his name first, and that Hall and himself would sign under his; that Warner should go by the way of Morton's, call on him for the money, and if he got it, or any part of it, he would en-

CHITTENDEN,
January,
1833.

Warner
vs.
Hall.

dorse it upon the note; and if he did not get the money, would get Morton's signature to the note, carry it to the Bank, and with it take up the first note:—that the note was so made out, and signed by Hall and Warner:—and Warner took it, and went away towards Morton's, who lived between two and three miles from Hall's.

It also appeared that in the afternoon of the same day, Warner took up the first note by leaving the last one signed by Hall and himself, and that he has since paid the note last mentioned.

It further appeared, that Morton, left real estate in Williston, to the amount of about four hundred dollars, which was attached by two writs on Monday the 8d of January, 1831, at 9 o'clock in the forenoon, and by two other writs on the succeeding Tuesday morning, upon which judgements have been rendered, and all said estate set off in satisfaction of them, and holden by those creditors. It did not appear that Hall knew that Morton had absconded, prior to said attachments.

The counsel for the defendant, requested the Court to charge the jury, that if they believed the foregoing testimony to be true, they ought to return a verdict, for the defendant upon the ground, as urged by his counsel, that Warner ought either to have pursued after Morton, or communicated the fact to Hall, at Hall's house, when he saw him, that Morton had absconded, thereby giving Hall an opportunity to secure the debt either by pursuing after Morton, or by an attachment of his property; and that by neglecting to give the information to Hall, and carefully secreting the fact from him, and thus preventing his securing the demand, he had forfeited all equitable and legal claim upon Hall for the money. But the Court refused so to direct the jury, but charged them that the facts testified to would amount to no defence to the action.

To which opinion and charge of the County Court the counsel for the defendant excepted, and the case was reserved for the opinion of this Court.

*Richardson for defendant.*—Contended that such a concealment of facts from the defendant, by the plaintiff, as tended to deprive him of the means of securing himself,

CHITTENDEN, was a fraud. And cited 2 Stark. Ev. 467, *Vernon* vs.
January, *Keyes*, 12 East. 632 ; *Moses* vs. *McFarland*; 2 Bur. 1006.
1833.

Warner      Fraud is an extrinsic collateral act which vitiates all
vs.       transactions, even the most solemn proceeding of Courts
Hall      of Justice, 2 Stark. E. 575 ; 2 Dane, 545.

*Adams for plaintiff, contended*, 1st. The note originally
executed by Morton & Hall to C F. Warner, & Co. was
collectable as well of Hall as of Morton.

2d. When this note was paid by means of the Bank Note,
signed by Morton & Hall and plaintiff, in contemplation of
law, Morton & Hall became principals and the plaintiff was
surety for both.

3d. But it distinctly appears by the exceptions that the
plaintiff signed this note to the Bank at the joint request
of Morton & Hall.

4th. It is a matter of no importance in what character
Hall signed the first note, for if the second note was signed
by plaintiff for Hall & Morton or at their request he has a
right to demand of Hall payment for the whole sum he has
paid to the Bank.

5th. The evidence relative to the execution of the last
note, the absconding of Morton and subsequent attach-
ment of his property is immaterial, and can have no possi-
ble bearing in the cause.

The opinion of the Court was pronounced by

PHELPS, J.—A single exception only is taken in this
case. It is to the charge of the Court in instructing the
jury, that the evidence offered by the defendant, as stated
in the bill of exception, constituted no defence to the ac-
tion.

If the liability of the defendant, originated in the execu-
tion of the note on the first of January 1831, and depend-
ed now upon that fact and the payment of it by the plain-
tiff, there is no doubt that the evidence offered by the de-
fendant would have been pertinent and proper, as shewing
a substantial defence. It is certainly to be inferred, that
the defendant signed that note with the expectation that
Morton should also sign as a principal, and in ignorance of
the fact that Morton had absconded. It is also to be in-
ferred, that the plaintiff knew, or at least had reason to

believe, that he had absconded; and the suppression of
the facts, under such circumstances, would be deemed such a fraud upon the defendant, as would in equity and
in law vitiate the note.

It appears however, that the plaintiff had previously executed with Morton and Hall, at their joint request, a note to the Bank of the United States, for the purpose of satisfying a note by them previously executed to Warner & Co. With respect to this note, Warner is clearly to be considered as surety for the two, and having a legal claim against them both for an indemnity. The note first mentioned was, it appears, substituted at the Bank, for the former one, and the amount ultimately paid by the plaintiff. Upon this statement of facts, we are of opinion, that the payment made by the plaintiff is to be referred to the original debt contracted by the three at the Bank, and to be regarded simply as a payment by the surety, of the debt of his principal. The interposition of the note executed on the first of January, 1831, we consider of no importance. Admitting it to be void, so far as the defendant was concerned, it certainly did not satisfy his liability to the plaintiff, nor can it be considered as satisfying the debt to the Bank, unless it be regarded as binding on the plaintiff, and if we are to hold it in that point of view as a payment to the Bank, it amounts to a direct and immediate payment by the plaintiff of the proper debt of Hall & Morton. Whether we consider that note therefore as binding on both, on the plaintiff alone, or on neither, the result is the same. Upon the first supposition we must regard Hall as principal and Warner as surety, and the payment by the latter, will sustain the action; and upon either of the two latter the plaintiff must be considered to have paid the original debt, and is entitled to a full indemnity. If it be indifferent what effect we give to that note, or whether we give it any, it certainly is unimportant how it was obtained. Conceding therefore to the defendant all he claims as the result of his evidence, it leaves his original obligation to the plaintiff unimpaired and the plaintiff's claim unsatified.

An attempt is however made to give to this supposed fraud a retro-active effect, and to bring it to bear upon a previous bona fide transaction, and that in such a manner

CHITTENDEN,
January,
1833.

Warner
vs.
Hall.

as to discharge an undoubted obligation previously existing. The situation of the defendant is in no wise varied from what it would have been, had not the transaction complained of took place. The only effect of obtaining the note in question was to suspend the plaintiff's claim for the period for which the note was to run, and to give the defendant further time for the payment.

It is argued, that the defendant was injured by the omission of the plaintiff to give information that Morton had absconded, and that, in consequence of that omission, he has lost the opportunity of obtaining indemnity. Admitting the defendant to have been originally a surety for Morton in this transaction, it is still to be borne in mind that the plaintiff was a mere surety for him; and however courteous it might have been, in the plaintiff to give the desired information, and however the defendant might have been benefited by it, as an act of friendly courtesy, it can hardly be seriously contended, that the law imposed upon the plaintiff the burthen of providing means of indemnity to the defendant, or of seeing to his interests.— Unless it can be made out, that a legal obligation rested on the plaintiff to give the information, the omission to do so can not be regarded as a legal delinquency, or as attended with legal consequences. It is an omission to do that, which he was under no legal obligation to do; and if it be censurable it is so only as evincing a want of that friendly regard for the interests of his neighbor, which the law leaves to other tribunals than its own to enforce.

We consider that the direction of the trial was right and the judgement of the County Court is affirmed.